UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

OSCAR ROSALES, Plaintiff,

vs.

CORIZON, INC., NEIL JOHN MARTIN M.D., Defendants.

No. 2:16-cv-00080-WTL-DKL

**Entry Discussing Motion for a Preliminary Injunction**

Plaintiff Oscar Rosales, an inmate at the Wabash Valley Correctional Facility ("Wabash"), brought this action alleging that he has received inadequate medical care at that facility. He seeks injunctive relief that would require medical staff to provide him with: (1) a wheelchair; (2) an MRI of his back, neck, and knees; (3), pain medication; (4) a "complete physical exam" with a Spanish speaking provider; (5) a consultation with an orthopedic surgeon; and (6) examination by a urologist. For the following reasons, Rosales's motion for a preliminary injunction [dkt 22] is **denied**.

**I. Standard**

A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need.[1] *Goodman v. Ill. Dep't of Fin. and Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir. 2005). A party seeking a preliminary injunction must show (1) that its case has "some

[1] The plaintiff titles his request as on for a Temporary Restraining Order and Preliminary Injunction. Because the standards are essentially identical and because the defendants have had a full opportunity to respond, the Court treats the motion as one for a preliminary injunction.

likelihood of success on the merits," and (2) that it has "no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied." *Ezell v. City of Chi.*, 651 F.3d 684, 694 (7th Cir.2011). If the moving party meets these threshold requirements, the district court "weighs the factors against one another, assessing whether the balance of harms favors the moving party or whether the harm to the nonmoving party or the public is sufficiently weighty that the injunction should be denied." *Id.* The district court's weighing of the facts is not mathematical in nature; rather, it is "more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895–96 (7th Cir.2001) (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir.1992))

**II. Facts**

Rosales's claims are based on medical care he has received for his urinary tract problems and knee, back, and neck pain.

A. *Urinary Tract Issues*

On November 14, 2014, defendant Dr. Martin saw Rosales for his complaints of pain and inability to urinate. Dr. Martin's exam was normal and Dr. Martin recommended that Rosales restart Pamelor and ordered Flomax. He also ordered a urinalysis.

On December 5, 2014, Rosales complained that he could not urinate that morning and had groin pain. Dr. Martin discontinued Pamelor and ordered placement of a catheter and a urine sample. Rosales received relief from his pain and distention with this treatment. However, Rosales continued to complain of inability to urinate and Dr. Martin ordered re-placement of a catheter and admission to the infirmary for urinary retention. On December 8, 2014, Dr. Martin examined

Rosales in the infirmary and noted that the catheter appeared to relive his pain over the weekend and his bladder was not extended. Dr. Martin diagnosed Rosales with acute urinary retention and recommended an urgent surgical consult with an urologist.

On December 10, 2014, Rosales went to Terre Haute Regional hospital for a urological consult with Dr. P. Patel. A CT scan of Rosales's abdomen and pelvis showed only mild enlargement of the prostate (as well as degenerative lumbar spine changes.) Dr. Patel diagnosed Rosales with acute urinary retention and an enlarged prostate. Dr. Patel ordered surgery to relieve the urinary obstruction and rule out cancer. Rosales returned to Wabash that same day. Dr. Martin admitted him to the infirmary to monitor his condition and requested approval for the surgery.

Dr. Patel performed the surgery on December 19, 2014. After examination of the removed prostate, Rosales was diagnosed with an enlarged prostate and no cancer. Rosales returned to Wabash the next day and Dr. Martin admitted him to the infirmary and requested a follow-up appointment with a urologist. Rosales was discharged from the infirmary on December 23, 2014. Rosales was able to urinate without a catheter, but complained of abdominal cramping. Dr. Martin examined Rosales on December 30, 2014, and Rosales complained of blood in his urine. Dr. Martin examined him again the next day and noted that there was still blood in his urine, but less than there was the previous day. On January 3, 2015, Dr. Martin ordered Cipro to address this issue.

On January 7, 2015, Rosales returned to Terre Haute Regional Hospital for his two-week follow-up appointment. He complained of frequency, urination at night, painful urination, and blood in his urine. He also complained of lower abdominal and rectal pain. On exam his abdomen was soft, non-tender, and he had bladder distention. He was ordered to continue Cipro and Tylenol

for pain for the next 5-7 days. Corizon medical staff were ordered to observe him for continued complaints of urgency, frequency, and night urination. The urologist explained that the blood in his urine should resolve within 8 weeks after the surgery, and if it did not then Rosales may be experiencing an overactive bladder. A follow-up appointment was ordered in three months to ensure symptom improvement. Corizon medical staff scheduled that appointment.

On January 14, 2015, Dr. Martin examined Rosales and noted that he experienced urinary tract infection symptoms after surgery and was placed on Cipro, but continued to complain of some discomfort. Dr. Martin requested a consult with a urologist. On February 18, 2015, Dr. Martin examined Rosales while he waited for a urologic consult. Rosales continued to complain of painful urination, although his bleeding had largely subsided. Dr. Martin awaited the urologist's determinations for further care. On April 15, 2015, Rosales went to Terre Haute for a urological consult. He complained of pain, painful urination, and lack of fluid with ejaculation. A urinalysis and post-void residual bladder scan were ordered, which were negative. On April 22, 2015, Dr. Martin examined Rosales in a seven day follow-up after his urologist consultation. Dr. Martin discussed with Rosales that the urologist found no urological issue with him and recommended follow-up as needed. Rosales accepted this determination but still complained of painful urination, hesitancy, and sexual dysfunction. Dr. Martin ordered a urinalysis.

On June 17, 2015, Dr. Martin examined Rosales for his continued complaints of painful ejaculation. Rosales said that twice since having surgery he has had spontaneous painful ejaculations at night and also when masturbating. Dr. Martin explained that this was not a level I or II care issue and encouraged him to stop masturbating, especially to excess.

B. *Knee, Back, and Neck Pain*

Rosales has suffered from, and been treated for, knee, back, and sciatic nerve pain for many years. His previous allegations that prison medical staff failed to treat these conditions were raised in an earlier lawsuit filed in this Court. *Rosales v. Corizon, et. al*, 2:14-cv-61-JMS-WGH. On December 29, 2015, the court dismissed claims in that case on summary judgment and held that the medical defendants were not deliberately indifferent to Rosales's knee, back, neck and sciatic nerve pain. Specifically, the court stated:

> Mr. Rosales suffers from osteoarthritis in his left knee. Appropriate treatment of osteoarthritis includes conservative measures, including possibly anti-inflammatories, injections, and physical therapy, all of which the medical staff and Dr. Joseph provided to Mr. Rosales. Dr. Joseph addressed Mr. Rosales' concerns through diagnostic testing, physical exams, physical therapy, prescribing pain/anti-inflammatory medications including Mobic and Tegretol, and attempting to get Mr. Rosales out of his wheelchair in order to build muscle and reduce atrophy and pain.

Rosales's claims in this case relate to care he received starting in 2013. At the end of 2012, he completed physical therapy for his musculoskeletal complaints. Rosales was examined a number of times during 2013 and 2014 for his complaints of back and knee pain. He was advised to use his walker and to continue pain medication.

On January 15, 2014, Dr. Dwyer examined Rosales for his complaints of left knee and back pain. At that time he was using his walker without issue. An exam revealed spine tenderness and muscle spasm, but negative straight leg raises. Dr. Dwyer ordered repeat x-rays and continued Mobic and Trofanil for Rosales's pain. On February 12, 2014, Dr. Dwyer again examined Rosales for his complaints of chronic lumbar spine pain. Rosales requested x-ray results and pain medication. Dr. Dwyer's physical exam was negative. She observed that Rosales's gait was normal, and she noted that Rosales was on Mobic and Trofanil. On March 26, 2014, Dr. Dwyer saw Rosales

in a follow-up and noted that the repeat x-rays showed arthritis in his back and right knee, stable from the year earlier and arthritis consistent with the old fracture in his left knee. Dr. Dwyer explained that there was no cure for Rosales's chronic arthritis pain from old injuries, but prescribed Pamelor to try to minimize the pain.

On May 27, 2014, Dr. Rajoli saw Rosales for his left knee pain. A physical exam showed no muscle wasting to the left lower lateral calf, there was no swelling in the joint and range of motion was normal. Rosales was using a walker and was able to walk without support. Dr. Rajoli recommended transitioning from the walker to a cane to improve his ability to move around and reduce falls. Dr. Rajoli instructed Rosales to purchase Aspirin from the commissary as needed for pain. Rosales also continued on Pamelor. On June 25, 2014, Dr. Lang examined Rosales for his complaints of back pain and painful urination/urinary obstruction on Pamelor. Dr. Lang discontinued Pamelor and ordered Mobic for Rosales's pain. On June 27, 2014, Dr. Lang's Mobic request was denied. Rosales was encouraged to strengthen his muscles through mobility and take anti-inflammatory medication as needed for his arthritis. On August 15, 2014, Dr. Lang performed manual therapy to Rosales's neck and other muscles with some improvement. Rosales received Mobic through August 18, 2014, and continued on the antidepressant Celexa that is also used to treat chronic pain.

On December 30, 2014, Dr. Martin examined Rosales and noted laxity in his left knee. Dr. Martin recommended an orthopedist consult. Rosales requested and was provided with a wheel chair pending his orthopedic consultation to determine if he had an acute injury. On January 23, 2015, x-rays of Rosales's left knee revealed mild to moderate degenerative change. On February 9, 2015, Rosales went off-site to Terre Haute Regional Hospital for an orthopedic consultation with

Dr. Kurt Madsen. Dr. Madsen determined that Rosales's left knee was "dysfunctional." Dr. Madsen recommended an MRI of Rosales's left knee. Corizon medical staff requested an off-site MRI based on Dr. Madsen's recommendation. Upon review of the MRI, Dr. Madsen recommended arthroscopic surgery to the left knee. Surgery was approved and scheduled.

On March 3, 2015, Rosales returned his wheelchair. On April 29, 2015, Dr. Martin determined that Rosales was deconditioned from his long use of wheelchairs and/or walkers. Dr. Martin noted that Rosales's subjective complaints were out of line with the objective findings. Dr. Martin strongly encouraged Rosales to stop using his wheelchair and walker and saw nothing specifically wrong with his back. Rosales's old x-rays showed no fracture and only minimal degenerative changes and he had no new injury to account for any change that would require further study. Dr. Martin prescribed prednisone.

On May 6, 2015, Rosales went to Terre Haute Regional Hospital for a left knee arthroscopy. He returned to Wabash that same day and was admitted to the infirmary for post-operative care and recovery. He received narcotics and kept his leg elevated and in a cryo cuff to reduce swelling. He was discharged from the infirmary on May 11, 2015 with a bottom bunk pass, medical lay-in, and crutches. He received Norco for his pain from May 6, 2015 through May 12, 2015.

On May 13, 2015, Dr. Martin saw Rosales in a follow-up appointment after his discharge. He still complained of pain so Dr. Martin ordered prescription strength Tylenol for another seven days. He complained of back pain, but Dr. Martin noted that his prior examination one week earlier noted no back issues. Dr. Martin charted that Rosales seemed highly motivated to keep a wheelchair despite the fact that he did not need it. Dr. Martin suspected that this was a safeguard

against predation from other offenders and advised Rosales to discuss the issue with mental health. Corizon medical staff coordinated an off-site follow-up consultation with Dr. Madsen. On June 3, 2015, Dr. Madsen saw Rosales in a follow-up appointment and ordered Rosales's ace wrap and knee immobilizer to be discontinued. Dr. Madsen recommended and ordered physical therapy through Terre Haute Regional Hospital. On June 9, 2015, Dr. Samuel Byrd examined Rosales in a follow-up appointment after his consultation with Dr. Madsen. Rosales still needed crutches to walk, but had no increased pain or swelling. Dr. Byrd recommended physical therapy and a follow-up consultation as ordered by Dr. Madsen.

In July, 2015, Rosales underwent physical therapy and was doing well with gait. The physical therapist replaced Rosales's crutches with a cane and determined that he should be weaned from that quickly. When Rosales complained of back and neck pain, the physical therapist advised him that his legs were feeling numb because he was not using them and that he should get up and exercise. However, Rosales used his wheelchair rather than his cane. Dr. Martin told Rosales, as he had before, that his refusal to walk after his surgery was directly responsible for his current issue with his knee. On July 21, 2015, the physical therapist determined that Rosales had adequate strength and ability to walk without assistance and should only use a cane for long distances. Rosales completed physical therapy on July 23, 2015.

On July 29, 2015, Dr. Martin examined Rosales after he completed physical therapy. Dr. Martin again told Rosales that his refusal to walk without a wheelchair or walker greatly hindered his progress. In response, Rosales told Dr. Martin that his knee no longer bothered him, but that now his back bothered him. Dr. Martin explained that his refusal to walk for months while sitting in wheelchair and using a walker had greatly deconditioned his core

muscles and was largely responsible for his back pain. Dr. Martin ordered over the counter analgesics for six months to see if conservative treatment would improve Rosales's mechanical low back pain.

On October 12, 2015, Rosales continued to complain of knee and back pain. Dr. Samuel Byrd ordered a second round of physical therapy. On October 16, 2015, Rosales began physical therapy at Wabash. On November 11, 2015, Rosales completed five sessions of physical therapy and the therapist recommended that Rosales continue to exercise to improve his strength and gait. Medical staff also encouraged Rosales to continue post-physical therapy exercises.

On January 22, 2016, Dr. Rajoli saw Rosales for his complaints of joint pain. Rosales had no difficulty getting up on the exam table and did not walk with a cane. Dr. Rajoli's physical exam was negative, but Dr. Rajoli gave Rosales one dose of Tordol to alleviate his pain. On February 3, 2016, Rosales presented to Dr. Rajoli again with pain complaints and was able to move his back without any range of motion limitations. Dr. Rajoli advised Rosales to continue with over the counter medications for pain and determined that no further studies or follow-up appointments were indicated.

## III. Discussion

Rosales seeks a preliminary injunction in the form of an order directing that he be provided: (1) a wheelchair; (2) an MRI of his back, neck, and knees; (3), pain medication; (4) a "complete physical exam" with a Spanish speaking provider; (5) a consultation with an orthopedic surgeon; and (6) examination by a urologist.

To succeed in obtaining preliminary injunctive relief, Rosales must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm if preliminary relief is

not granted, that the balance of equities tips in his favor, and that it is in the public interest to issue an injunction. *United States v. NCR Corp.*, 688 F.3d 833, 837 (7th Cir. 2012). A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). The movant bears the burden of proving his entitlement to such relief. *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999).

A. *Likelihood of Success on the Merits*

The defendants argue that Rosales has not shown that he is reasonably likely to succeed on the merits of his claim. The underlying claims in this action are that the defendants have exhibited deliberate indifference to his urinary tract issues and knee, back, and neck pain. To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 8374 (1994); *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014); *Arnett v. Webster*, 658 F.3d 742, 750-51 (7th Cir. 2011).

"[C]onduct is 'deliberately indifferent' when the official has acted in an intentional or criminally reckless manner, *i.e.*, "the defendant must have known that the plaintiff 'was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so.'" *Board v. Freeman*, 394 F.3d 469, 478 (7th Cir. 2005) (*quoting Armstrong v. Squadrito*, 152 F.3d 564, 577 (7th Cir. 1998)). "To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of

accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). *See Plummer v. Wexford Health Sources, Inc.*, 609 Fed. Appx. 861, 2015 WL 4461297, *2 (7th Cir. 2015) (holding that defendant doctors were not deliberately indifferent because there was "no evidence suggesting that the defendants failed to exercise medical judgment or responded inappropriately to [the plaintiff's] ailments"). In addition, the Seventh Circuit has explained that "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.*

1. <u>Urinary Tract Complaints</u>

The defendants argue that Rosales has not shown a likelihood of success on the merits of his urinary retention claim. The defendants do not argue that the first prong of the deliberate indifference analysis – an objectively serious medical condition – is not satisfied here. But they do argue that Rosales has not shown that he was deliberately indifferent to his complaints of urinary pain.

The record before the Court shows that Dr. Martin has repeatedly responded to Rosales's complaints regarding his urinary tract issues. In approximately 2014, Rosales experienced an enlarged prostate that caused urinary retention. At that time, Dr. Martin prescribed medication and requested a urinalysis to determine if Rosales had a urinary tract infection. As soon as Rosales began complaining of urinary retention, Dr. Martin started care to relieve that condition and

referred him to a urologist for specialty care. The urologist diagnosed Rosales with a benign enlarged prostate that blocked his urinary tract and performed a procedure to relieve urinary retention. Rosales then attended several follow-up consultations with the urologist who determined that as of April 2015, he had no additional urological issues and did not recommend any follow-up consultations. Dr. Martin relayed this determination to Rosales and continued to monitor his condition and provide him with advice.

The Court concludes that Rosales has not demonstrated a reasonable likelihood of success on the merits of this claim. The record before the Court shows that during his course of care for his urinary tract issues, Dr. Martin examined Rosales, prescribed medications, referred him for surgical consults, and followed the advice of the urologist. Rosales has provided no evidence that Dr. Martin was deliberately indifferent his urinary tract complaints.

2. Knee, Back, and Neck Pain

The defendants also argue that Rosales cannot show a reasonable likelihood of success on the merits of his claims related to his knee, back, and neck pain. Again, they do not argue that Rosales's pain complaints are not serious, but they do argue that they have not been deliberately indifferent to Rosales's needs.

The medical records reveal that Rosales was diagnosed with arthritis since at least 2009. Prison medical staff routinely treated him for his arthritic pain with examinations, x-rays, pain medications, and assistive devices (which included a wheel chair, a walker, and crutches). In addition, medical staff encouraged Rosales to exercise and refrain from using his wheelchair to build strength and prevent muscle weakening. All medical providers observed that Rosales was able to walk on his own but did not want to give up his wheelchair.

In late 2014, Dr. Martin recognized problems in Rosales's left knee and recommended a consult with an orthopedist. Based on the consultant's advice, Rosales underwent an elective knee repair surgery. The surgeon monitored Rosales's healing, determined that his knee had adequately healed, and recommended physical therapy to improve his strength. Rosales underwent two courses of physical therapy for his pain complaints. The physical therapists determined that he was able to do so and reminded him that failing to walk on his own would hinder his progress.

In short, medical staff have continued to monitor Rosales's condition with examinations and pain medications. The evidence shows that he is able to walk without assistance, has healed from his knee surgery, and has appropriate range of motion. No provider has indicated the need for further treatment to address his arthritis, a wheelchair, or further study. Rosales's disagreement with these conclusions is insufficient to show that he has a reasonable likelihood of success on his claims. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

B. *Irreparable Harm, Balance of Harms, and Public Interest*

Rosales also has not shown that he will experience irreparable harm if his requested injunctive relief is not granted, that the balance of harms weighs in his favor, or that the requested relief would be in the public interest. "Irreparable harm is harm which cannot be repaired, retrieved, put down again, atoned for.... [T]he injury must be of a particular nature, so that compensation in money cannot atone for it." *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997). There is no evidence that Rosales will experience an injury that cannot be repaired. The record shows that Rosales has been given, and continues to receive, adequate care for his urinary and pain complaints, including examinations, physical therapy, surgery, and pain medication. For the same reason, he has not established that the balance of the equities favors him.

Finally, Rosales also has not shown that the relief sought would serve the public interest. Courts have held that prison administrators "must be accorded wide-ranging deference in the . . . execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Pardo v. Hosier*, 946 F.2d 1278, 1280-81 (7th Cir. 1991) (internal quotations omitted).

## IV. Conclusion

For the foregoing reasons, Rosales's motion for a temporary restraining order and preliminary injunction [dkt 22] must be **denied**.

**IT IS SO ORDERED.**

William T. Lawrence

Date: 9/29/16

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

OSCAR ROSALES
194882
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

All electronically registered counsel